(1 App. Div. 592.)

### STANFIELD v. KNICKERBOCKER TRUST CO. et al.

(Supreme Court, Appellate Division, First Department. February 21, 1896.)

1. SECONDARY EVIDENCE—CONTENTS OF BOOKS—PROOF OF LOSS.

Proof of loss of some books of a firm, so as to admit of the testimony of the bookkeeper as to their contents, is sufficiently shown by his testimony that he made diligent search for the books, and found some of them in the cellar of the store, in some old rubbish, and among them the covers of the books in question, but the insides of them had been torn out and taken away, and he could not find them.

2. WITNESS—PRIVILEGED COMMUNICATION.

A conversation between an attorney and a person relative to the person's being a member of a firm is not privileged merely because the attorney was counsel for him in certain matters, he not having been counsel for him relative to firm matters, and the conversation not having been at either of their places of business or in connection with any business between them.

Appeal from special term, New York county.

Action by Victoria L. Stanfield against the Knickerbocker Trust Company, executor of Mark M. Stanfield, deceased, and George O. Stanfield. From a judgment dismissing the complaint on the merits, plaintiff appeals. Reversed.

The action was brought to recover money alleged to have been loaned by the plaintiff to the copartnership. The plaintiff's husband was concededly a member of this copartnership, and it was claimed that his father, the deceased, was his copartner. The main questions involved in the case were whether the deceased was a member of the copartnership, and whether the money was loaned by the plaintiff to the copartnership, or whether the loans were to her husband individually. The trial court decided both these questions in favor of the defendant executor. The examination of Charles Donahue for the purpose of showing that Mark M. Stanfield, deceased, was a partner in business with his son, George O. Stanfield, was as follows: "I was well acquainted with Mark M. Stanfield in his lifetime. I knew him for about thirty years. I drew his last will, and was a witness to it. Q. Did Mr. Mark M. Stanfield state to you a short time before he died, and about the time you drew the will, anything in relation to this business in which his son was engaged in Fourteenth street? (Objected to by defendants' counsel, as incompetent, immaterial, and irrelevant. Objection overruled. Exception.) A. You speak about it in connection with drawing the will. It was hardly in connection with drawing the will. By defendants' counsel: Q. Were you not acting as the counsel of Mr. Stanfield? A. Not in regard to that. Q. You were acting as counsel for Mr. Stanfield, were you not? A. In some things. Q. You were his counsel? A. In some things only. (Defendants' counsel objected to the witness testifying to conversations with Mr. Stanfield, the deceased, on the ground that he was acting as counsel for him, and therefore it is privileged. Objection sustained. Plaintiff excepted.) By plaintiff's counsel: Q. At the conversation which you had with him when he spoke about this business, it was, as I understand it, at the time when you were transacting business for him. I don't mean that it did not cover a period that you were acting as his counsel, but I mean at the time of this conversation, had you any conversation with him about the other professional business? A. No; I had not. Q. State what that conversation was. (Objected to by defendants' counsel.) By defendants' counsel: Q. Was it not in your office? A. No. Q. Have you not said it was at your office? A. No. Q. Where was it? A. It was at the Victoria Hotel. Q. What was the occasion? A. Mr. Wentworth, who was with him, asked if I would not stop in there and see him; Mr. Wentworth had something he wanted to say, and was to be there. And I went up and saw him in regard to something Wentworth had to do with it. Q. You knew at this time that he regarded you as his counsel, did he not? A. No; not except

in those two things. Q. You knew that you were consulted by him, and were advising him with reference to certain business matters? A. That is true; yes. Q. And he looked upon you and reposed in you that confidence which a client is so well recognized by the law to repose in his counsel? A. I only know he consulted me about those two things. You can draw your own conclusion. Q. Do you think that a client who has a lawyer in whom he places confidence and reposes trust will only talk to him about his intimate business affairs when he calls upon him for the purpose of being advised in regard to some particular point? A. That is a matter of ethics the court has to decide, not me. I have given you the facts. By the Court: Q. At this time, when you had this conversation, the relationship of counsel to him was then existing? A. Yes; I had been advising him about the lease, in regard to the lease, commencing, I should think, in October, maybe before that. The lease had not been ended when the will was drawn. (Defendants' counsel renewed his objection to the witness testifying to conversation with the deceased, on the ground it is privileged and prohibited by the Code. Objection sustained. Plaintiff excepted.) By plaintiff's counsel: Q. At this time, and during these thirty years you speak of, you frequently met him, and talked over matters with him as a friend? A. I frequently met him. I don't know as to it being friendly. My relations commenced with him through Mr. Steele, who had been in my office, and was his counsel when Mr. Stanfield was one of the firm of Stanfield, Wentworth & Co. Q. But. as a matter of fact, he had other counsel? A. I only knew he had Mr. Steele, who had been in my office, as his counsel. Q. Wasn't he in the habit of calling his son George Otis? A. Otis was the name I think he generally called him. I don't recollect his calling him George. I did not know the son. Q. I show you this certified copy of the will, and I call your attention to the clause in reference to George Otis. Did Mr. Stanfield say anything to you at the time you drew that will in relation to his interest in the business? (Objected to by defendants' counsel as incompetent, it being a privileged communication. Objection sustained. Plaintiff excepted.)"

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

Archibald C. Shenstone, for appellant.

William Allen Butler and John Notman, for respondents.

WILLIAMS, J.　It seems to us that there was abundant evidence to establish both the copartnership and the copartnership loan, and that the court was in error in dismissing the complaint upon the merits, even on the evidence admitted on the trial. But, more than this, we are of opinion that the trial court erroneously excluded evidence offered by the plaintiff, and objected to by the defendants, which requires a reversal of the judgment.

The witness Frederick H. Smith testified that, just before the death of the deceased, he had a conversation with him about the business his son, the plaintiff's husband, was carrying on, and the witness was then asked if, in that conversation, the deceased said anything about his being a partner in the business. The court refused to permit the witness to answer these questions. The plaintiff testified to having made the loans, delivering the money to her husband, and she stated the conversation she had with her husband in reference to the loans at the time they were made. She further testified that the loans were made to the copartnership, and that a full account of such loans and the payments made thereon was kept in the copartnership books. The witness Wingfield G. Burton was called as a witness, and testified that he was

in the employ of the copartnership at the time that the loans were alleged to have been made, and kept the books of account; that, since the death of the deceased, he had made diligent search for the books, and had found some of them in the cellar of the store, among old rubbish, and among them the covers of the books in question, but the insides of these books had been torn out and taken away, and he could not find them. He was then asked to state the contents of the books, what account with plaintiff was kept on the books while he was bookkeeper, what amount of loans from the plaintiff to the copartnership, and what accounts of payments to her thereon were entered in such books, and the amount owing to her as appeared on the books. The court refused to permit this evidence to be given. We think the loss or disappearance of the books was sufficiently shown to entitle the plaintiff to give parol evidence of their contents.

Mr. Donahue was called as a witness, and was asked to state the conversation between himself and deceased with reference to the copartnership; but the court refused to allow him to do so, on the ground that the conversation was privileged. We think that no such privilege was shown.

These are some of the rulings excluding evidence offered on the part of the plaintiff which seem to us to have been erroneous. We think the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

BARRETT, RUMSEY, and PATTERSON, JJ., concur. VAN BRUNT, P. J., concurs in result.